## Thornton *v.* Campton.

The price that a farm brought at auction in 1816, under a probate license, may be shown as evidence of what its value was in the four years ending in 1814; and it is no matter whether the license was regularly granted or not.

The price that a similar farm, in the immediate vicinity, brought in 1809, may be shown for the same purpose.

The liabilities of towns to maintain their poor are settled by law, and cannot be enlarged by the direct acts of selectmen or others.

There is a legal presumption in favor of the acts of public officers, that they were authorized by the exigencies of the cases in which they were performed. Therefore the acts of selectmen, in paying bills incurred by other towns for the support of a pauper, may be shown in evidence, as tending to prove any fact necessary to establish the settlement of such pauper in that town.

Books kept by selectmen, containing accounts of the finances and expenses of the town, are evidence.

Assumpsit. This action was brought to recover for supplies furnished by the plaintiff to one Samuel Moulton, a pauper, alleged to have his settlement in said Campton, deriving it from his father, Daniel Moulton.

It was admitted by the defendant town that the supplies had been furnished, and that the said Samuel was

poor and stood in need of relief, and it was not controverted that he had the settlement of his father, Daniel Moulton.

It appeared that said Daniel moved into Campton about the year 1807 or 1808, and went upon a wild lot of land, containing 53 acres, on which he built a log house and barn, and lived on the premises till the spring of 1815, when he died; that he paid taxes on his poll and estate, including said land, from 1809 to 1813, inclusive, and that his taxes for 1814 were abated; and the plaintiff contended that he gained a settlement in said Campton by owing real estate of the value of $150, for four years, and paying all taxes assessed during that time. A deed of the said premises to the said Daniel Moulton was produced by the defendant, dated February, 1810, and the plaintiff not showing any other title, although there was some evidence tending to show a purchase before that time, the jury were instructed to commence the reckoning of the four years from the date of the deed, or the spring of 1810, and extend it to the spring of 1814, prior to the time that the taxes for that year should be assessed; to which there was no exception by either party.

The plaintiffs, among other evidence, offered to prove the sale of the premises in March, 1816, by the administrator of said Moulton's estate, as tending to show the value of the land in the spring of 1814, the last part of the four years.

It appeared that the property was sold at auction, and had ever since been held by the purchaser under the title then acquired. It however appeared that the license to sell was granted to the administrator by the judge of probate, without notice.

To this evidence the defendants excepted: 1st, because the license was granted without notice; 2d, because the sale was too remote from the time in controversy, to wit, the first day of April, 1814. The evidence was, however, admitted by the court.

It appeared also that at the same time of the administrator's sale, the widow's dower in said premises was also sold, and a deed then given by her, and that it has ever been held under that deed; and the plaintiffs offered the deed, and the testimony of a witness who was present at the sale, and knew the price paid to be the consideration set forth in the deed.

The evidence of the transaction was also excepted to, as too remote from said first day of April, 1814, and also as incompetent to prove the price paid; but the court admitted it.

The plaintiffs also produced evidence of the sale of a similar lot of land in the immediate vicinity of the Daniel Moulton place, in the year 1809, as tending to show the value of the Moulton premises at the commencement of the four years. To the admission of this evidence the defendants excepted.

In the course of the trial the plaintiffs offered evidence (which was admitted by the court), to show that the defendants had paid bills for the support of the widow of said Daniel Moulton and his minor children. In one or two instances these were proved to have been paid out of the town of Campton by those who received or made the payments. It appeared also that they were paid by the overseers of the poor of said Campton. The evidence of the other payments consisted of the book of accounts and records of said Campton, by which it appeared that various sums were paid from time to time, and in some instances they were set up as the poor of the town, and bid off to be supported at a certain rate per week.

This evidence was excepted to, as incompetent. The books were also excepted to, as being the account books of the selectmen merely. It appeared, however, that they were produced under a notice from the plaintiffs to bring forward the account books and records of the town, showing their receipts and expenditures. It appeared further,

that they were the only records kept by the town, of their receipts and expenditures, with annual settlements upon the same, and also that they were more than twenty years old.

In regard to this evidence the court charged the jury that it was to be regarded as of slight importance; that such payments might be made under a mistake as to the rights of the town, or to purchase peace, and under such circumstances should not have any weight in the decision of the case, and that at best it was not entitled to much consideration.

The jury returned a verdict for the plaintiffs, and the defendents moved to set the same aside, and for a new trial, for supposed error in the foregoing rulings of the court.

*Perley*, and *Bellows*, for the defendants. The book kept by the selectmen is not a book required by law to be kept, and therefore not evidence.

If a sale be evidence of value, it should be a real sale. Mere offers to buy amount to nothing.

*Wilcox*, and *Hibbard*, for the plaintiffs. The admissions of a town are evidence against the town. *Hopkinton* v. *Springfield*, 12 N. H. Rep. 328; 2 Kent 291; 1 Greenl. Ev. 228, 229; 17 Pick. Rep. 222.

A town may act under a mistake as to its rights; but if it have maintained the paupers for a long time, the fact tends to prove that it considered itself liable. 3 Stark. Ev. 733; 14 Johns. Rep. 367; 2 Cow. Rep. 557.

GILCHRIST, J. The pauper derives his settlement, as the plaintiffs suppose, from his father; and he was indebted for his, if such he had in Campton, to owning, for a term of four years, estate within the town of the value of $150, and paying the taxes required by law, as a con-

dition. The questions first arising relate to the evidence that was received to establish the value of the land which it appears that he owned and occupied for the requisite term, ending in the spring of 1814.

The price at which property has been actually sold is perhaps as good an indication of its value as can be found; and unless some evidence is produced to show that there has been imposition or mistake, it would hardly be necessary for the practical purposes of administering justice to look further than at the results of a sale at auction, for proof that the thing is worth as much as the price that is paid for it at such a sale.

It is very true that a sale to-day is not very satisfactory evidence of what the same land would have been worth half a century ago, or of what it may be worth as many years hereafter. But the causes which produce changes in the value of land and in the value of money are commonly so gradual in their operation that very safe inferences may be formed from the present value of a particular estate, as to what it was two, four, or six years ago, by persons conversant with the business of the neighborhood in which it is situated, and possessing a general knowledge of the actual rise or fall of the prices of property there. That usually belongs to jurors.

It is not easy to perceive what influence the alleged defect in the proceedings in the court of probate, preliminary to the sale, can have, in impairing the force of the evidence which the sale affords of the value of the property. If the defect was not known to the parties, it could surely have none; and if known, its only influence must have been to depress the price, since it cannot be presumed that a purchaser would give as much for a defective title as for a sound one. The material fact is, not that a valid sale took place by which an indefeasible title passed, but that such a sale was had as yielded the test sought, of the value of the property at the moment of the transaction.

Thornton v. Campton.

Evidence was also introduced to prove the sale of similar land in the immediate vicinity, with a view to show the value of that which is in controversy at that period. The sale was in 1809. Next to a sale of the land itself is a sale of land of a like quality in the immediate vicinity, as evidence of the value sought. In the case of *Whipple* v. *Walpole*, 10 N. H. Rep. 130, it was held that the value of horses might be ascertained by inquiring what was the cost, at the place named, of such horses as those in question; and this was upon the ground that "the question must have reference to actual sales, and presupposes that the witness has knowledge of the sale of horses at that place." The reason seems to apply in great force to the case before us, and indeed the assignment of it by the authority cited must be deemed conclusive of the question here raised.

The next objection taken was, that evidence was admitted to show that the selectmen and overseers of the poor of Campton paid for relief furnished out of town, to the widow of Daniel Moulton, and to her minor children. It was said that this was evidence that Daniel Moulton had become settled in Campton, and therefore relevant to the present issue. The instruction of the court to the jury, that the evidence had but little force, was undoubtedly correct, but did not relieve the case from the exception taken, nor us from the inquiry whether it had lawfully any force, or any place in the fabric of proof upon which the verdict rests.

The liability of towns to support their poor is founded wholly upon the statutes. It is only by virtue of the obligations so imposed that any town has the power to raise money for such a purpose.

Although the statute gives an action of assumpsit in favor of one town, to recover for supplies furnished for a pauper which another town is bound to maintain, it is well understood that the action is not founded upon any

actual promise, or upon any promise that results from an obligation on the part of the latter, except the duty which the statute imposes.

This obligation cannot be extended by any direct act of the selectmen, or others designed for that purpose, nor can the same thing be effected by any admission of theirs which has no force beyond the limits assigned for their general powers in regard to town affairs.    *Andover* v. *Grafton,* 7 N. H. Rep. 298.

As incident, however, to their general power over the prudential affairs of the town, and to their duty of paying the just charges that come against it, is that of admitting a doubtful claim to be just, for the sake of quiet, and to avoid the expense of litigating it, or because they believe it to be just, while it really is not so.

In *Hopkinton* v. *Springfield,* 12 N. H. Rep. 328, it was held that when a proper claim had once been settled by one town upon a demand made by another, as between those two, the settlement was afterward evidence of the justice of the claim in a controversy upon the same point.

That precise state of things does not exist here, since there is no evidence that the defendants ever settled a claim made by these plaintiffs, on account of this pauper, or on account of any other depending upon the settlement of Daniel Moulton.

The attempt here is not so much to bind the towns by any admissions that their officers have made, or that they themselves have made, but to show, by their course of conduct in times past, that the settlement of Daniel Moulton was in Campton.

There is always a presumption that public officers, in the exercise of the functions appropriate to the characters in which they assume to act, have not proceeded wholly without authority.    It is to be presumed that they have not acted without a lawful election, and as mere usurpers of the stations which they fill.    *Tucker* v. *Aiken,* 7 N. H.

Rep. 113. It is also to be presumed that the acts which they have performed have been authorized by the existence of a state of things either imperatively requiring, or at least legally calling for and justifying the supposed act. This presumption may not prevail in great force with respect to very recent transactions, but it gathers a good deal of strength as the acts recede in time, and the evidence becomes gradually lost, by which they might have been vindicated, or successfully assailed. *Van Omeron* v. *Dowick*, 2 Camp. N. P. Rep. 44; *The King* v. *Morris*, 552; Best on Presumptions, 68, 78; 1 Greenl. Ev. 40; *Bishop* v. *Cone*, 3 N. H. Rep. 513.

In the case under consideration, the title of Daniel Moulton to the land, and the payment of taxes during the four years required for the consummation of the settlement, were proved. The value of the land at the great distance of time has become a subject of doubt and of controversy. The means of ascertaining it may well be supposed to have been greater at the time when the widow and minor children of Daniel received relief, than those that now exist. And it is certainly a rational presumption that the selectmen who furnished it acted upon evidence that then existed, but which does not now appear, and that was sufficient to prove that the value of the property was not less than the sum that would have justified them in their official act.

Such a presumption appears to be in perfect harmony with the general principles of that very important branch of the law of evidence, and we think that the plaintiffs were properly permitted to prove that the selectmen in former years had admitted the settlement set up in this suit, by a course of procedure which could not have been justified unless that settlement existed, and unless the fact now asserted by the plaintiffs had been true.

As to the means used to prove the facts, they appear to have been the official entries of the acts of the selectmen

of the town; entries made by the agents of the town in the regular discharge of their duties; contemporaneous memoranda, such as are made for the precise reason that the facts they record are true. These books fall clearly within the rules which admit books and writings of this public nature to be given in evidence. 1 Greenl. Ev. 484. The law, which is in this particular the mere expression of the common sense of mankind, recognises such records as among the most authentic instruments of evidence, and they are, to the common apprehension, as satisfactory as any that exist. They are made for public inspection, while the events are recent which they record; they are made in the midst of those who can at once attest their verity, or detect an inaccuracy, if there be any, and by the public servants of those who have access to the record at all times.

We are therefore of the opinion that the exceptions to the verdict cannot prevail.

*Judgment on the verdict.*